Filed 9/9/15  P. v. Briceno CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARCUS BRICENO,<br><br>    Defendant and Appellant. | D066407<br><br><br><br>(Super. Ct. Nos. SCD253167, SCD250988) |

APPEAL from judgments of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed with directions.

Theresa O. Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

In two separate cases, separate juries found Marcus Briceno guilty of resisting an executive officer (Pen. Code, § 69)[1] and possession of a sharp instrument at a penal institution (§ 4502, subd. (a)). In bifurcated proceedings in each case the court found true allegations Briceno had three prior prison convictions (§§ 667.5, subd. (b), 668) and one prior strike conviction (§§ 667, subds. (b)-(i), 668, 1170.12). The court sentenced Briceno to an aggregate term of nine years 8 months in state prison.

Briceno contends on appeal (1) there was insufficient evidence to support his conviction for resisting or deterring an officer, (2) his conviction for possession of a sharp instrument in a penal institution should be reversed based on juror misconduct, and (3) the trial court abused its discretion in failing to strike his prior strike conviction in sentencing him for possession of a sharp instrument in a penal institution. We find no merit in any of these contentions and affirm the judgments. However, we direct the trial court to amend the abstract of judgment to correct certain clerical errors.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Case No. SCD250988*

1

On the night of September 19, 2013, San Diego Police Officer Blake Williams was patrolling in the Encanto area—a high narcotic area of the Southeastern Division—

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

2

when he saw two people standing between a motor home and a truck parked alongside a curb. The two people, a female with a walker and a male, later identified as Briceno, appeared to be close together doing something between the cars. As Williams approached in his vehicle, Briceno went to the sidewalk and started walking away. Williams believed there was suspicious, and possibly criminal, activity going on based on the way the individuals were standing and the way Briceno tried to evade him.

Williams exited his vehicle, walked toward the female and then made his way between the motor home and the truck to the curb to see what Briceno was doing. He saw Briceno bending over near the truck as if he were trying to conceal something or get something concealed in the truck. Williams observed a paper bag near an electrical box with a glass bottle inside and thought Briceno was trying to hide what appeared to be an alcoholic beverage. This was significant because Williams wanted to determine if Briceno had an open container, which would be an infraction.

When Williams asked Briceno to come over to talk, Briceno responded by saying he was not a "Fourth waiver" so the officer could not do anything, but Briceno offered to give Williams his identification. This was significant to Williams because people who have knowledge of a waiver of the Fourth Amendment right usually have been on probation or parole.[2]

---

[2]  A Fourth Amendment waiver is typically a condition of release on parole and means a parolee may have their person or property searched by a parole agent or any law enforcement agent without their permission. Briceno actually was on parole at the time of this incident and had a Fourth waiver as a condition of his release.

3

Briceno appeared animated and agitated; he walked back and forth, without getting too close to Williams. Williams tried to direct Briceno toward the front of the truck. Briceno did not follow anything Williams asked him to do and was looking around. Based on Briceno's demeanor, Williams thought there could be narcotics or a weapon in the area. Briceno fumbled for his identification card, but it appeared he was trying to distract Williams. Briceno then suddenly ran between the motor home and the truck and down the street. Williams pursued him.

During the pursuit, Williams grabbed Briceno, but Briceno turned and broke free of Williams's grasp. Williams lost his footing and fell to the ground. Williams injured his hand in the fall and tore off a nail. Williams's two spare ammunition magazines and his radio fell out of his holster as a result of the fall. Williams got up and continued to pursue Briceno past a trolley station with his radio dragging behind him. Williams reported information about the foot pursuit to other officers on his team.

Williams eventually caught up with Briceno and again grabbed him by the back of his shirt. When they stopped running Briceno turned toward Williams. Briceno had his fists clenched and positioned near his chest. Williams thought this was an aggressive stance and took Briceno to the ground. Briceno continued to fight and move around while Williams pinned him on the ground with Williams's knee on Briceno's lower back. Briceno's hands were underneath him when he fell, but he moved them down toward the waistband area of his pants as though he were reaching for something.

Although Williams told him to stop, Briceno continued to struggle and reach toward his waistband. Williams struck Briceno on the side of the head. He was then able to get Briceno's hands behind his back and place him in handcuffs.

As they were walking back toward the trolley station, other officers arrived and Williams placed Briceno on a curb. Other officers stayed with Briceno while Williams recovered the items he dropped during the pursuit.

Briceno complained of pain and said he was going to faint. He also said he had asthma. Medics cleared him at the scene, but officer Chris Cummings transported him to the hospital because Briceno refused to talk to them and laid slouched over onto the concrete.

When Briceno refused to get up from the curb, another officer applied a pain compliance technique known as a pressure point underneath Briceno's nose while Cummings pulled him up. Briceno rode to the hospital hunched over and slumped at the neck, acting like he was unconscious.

When they arrived at the hospital, Cummings opened the door and asked Briceno if he could get out of the car. Briceno did not respond. Cummings then said, "Get out of the car." Briceno turned toward Cummings with eyes wide open and said, "What are you going to do about it, motherf---er?"

Cummings reached into the car with his left hand and grabbed Briceno's sweatshirt. When Briceno resisted, Cummings applied a pressure point under the nostril with his left hand. Briceno pulled his head away and immediately moved it forward toward Cummings's hand in a head-butting or striking motion with his face. The

5

movement caused Cummings concern because he did not want his fingers bitten.  He could not see if Briceno was trying to bite him or strike him with his head.  Cummings pulled his hand away from Briceno's face, applied pressure under the jawbone, and pulled Briceno from the car.

Once out of the car, Cummings released the pressure point and grabbed Briceno by the right arm to walk him into the hospital.  Briceno swung his right arm and body away so he was facing Cummings.  Cummings, concerned Briceno would spit or head-butt him, grabbed Briceno's right arm while another officer grabbed his left arm to turn Briceno away from them as they guided him into the hospital.[3]

After Briceno was medically cleared at the hospital, Cummings transported him to the county jail.  Briceno, knowing he was going to jail, became very angry and began cursing and threatening Cummings.

During the first stage of booking, where they were taking Briceno's picture and processing paperwork before going to the nurse's station, Briceno threatened Cummings. He said in an enraged manner, "Take these handcuffs off and I'll beat your f---in' ass." This concerned Cummings because, once they get to the third stage of booking, where they take the suspect into a holding cell and transfer custody to the Sheriff's Department, he and his partner would be alone with Briceno without their weapons belt.  Cummings told Briceno if he were to fight them it would not end well for him.  Briceno responded

---

[3]    During the medical examination, a folding knife fell from Briceno's waistband.  It was three inches closed and had a hook blade.  As a condition of his parole, Briceno was not allowed to have a knife with a blade over two and a half inches long.

6

by saying, "I can't wait to f--- you up."  He wanted to fight Cummings specifically, not Cummings's partner because Cummings's partner was a female.  Briceno did not carry out his threats.

2

Briceno was charged with two counts of resisting an executive officer with force or violence (§ 69; counts 1 & 3), one count of battery on a peace officer with injury (§ 243, subd. (c)(2); count 2), and one count of making threats to a public officer (§ 71; count 4).

At the conclusion of the People's case, the court granted Briceno's motion for acquittal under section 1118.1 as to count 2 for battery on a peace officer with injury (§ 243, subd. (c)(2)) related to officer Williams.  When the jury could not reach a verdict regarding count 1, resisting an executive officer (§ 69), for conduct related to officer Williams, the court declared a mistrial as to that count.

With respect to conduct related to officer Cummings, the jury found Briceno guilty of count 3, resisting an executive officer (§ 69), but not guilty of count 4, threatening a public officer (§ 71).  Briceno admitted three prison priors (§§ 667.5, subd. (b), 668) and one strike prior under the three strikes law (§§ 667, subds. (b)-(i), 668, 1170.12).  The court found these allegations to be true.

B

*Case No. SCD253167*

1

In November 2013, while Briceno was in custody at San Diego Central Jail, a deputy for the San Diego Sheriff's Department found a razor blade, with tape on one side, on the desk under some papers in the cell Briceno shared with two other inmates. The papers, most of which were blank, did not indicate who possessed the razor blade.

The deputy determined who was assigned to the cell and, after admonishing them of their rights, questioned the inmates separately about the razor blade. Briceno admitted the razor blade belonged to him. He said he peeled it off a razor three weeks earlier.[4]

2

Briceno was charged with possession of a sharp instrument while confined in a penal institution in violation of section 4502, subdivision (a). Briceno waived his right to be present during the jury trial on this case. The court admonished the jury not to consider or discuss Briceno's absence from trial in deliberations.

During jury deliberations, one of the jurors sent the court a letter stating she could not return due to a medical condition caused by the stress of deliberations. The juror also contended there was misconduct by the other jurors, which we discuss further in section II.B., *post*. The court excused the juror and, after conducting individual voir dire with

---

4    Disposable razors are provided on the night shift and then are typically collected and checked approximately an hour later.

certain members of the jury, denied the defense motion for a mistrial. The reconstituted jury found Briceno guilty as charged.

Briceno waived his presence at the bifurcated trial regarding his priors. The court found true allegations Briceno had three prior prison convictions (§§ 667.5, subd. (b), 668) and one prior strike (§§ 667, subds. (b)-(i), 668, 1170.12).

C

*Sentencing*

The court granted Briceno's *Romero*[5] motion to strike the prior strike for the case regarding resisting an executive officer (SCD250988). The court denied the *Romero* motion for the case regarding possession of a sharp instrument while in a penal institution (SCD253167).

The court sentenced Briceno to the middle term of three years for case No. SCD253167, doubled to six years due to the strike prior with consecutive one-year terms for each of the three prison priors for a total of nine years. The court imposed a consecutive sentence of one-third the middle term, or 8 months, for case No. SCD250988 and struck the punishment for the prison priors in that case.

---

[5]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

DISCUSSION

I

*Sufficiency of the Evidence for Violation of Section 69*

Briceno contends there was insufficient evidence in case No. SCD250988 to support the jury's guilty verdict for trying to prevent officer Cummings from performing his duties by violence or threat of violence (count 3).  We disagree.

In evaluating a sufficiency of the evidence claim, " 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime … beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]" [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' "  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

10

Section 69 makes it an offense to "attempt[], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law" or by "knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty." (§ 69.) "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

The jury in this case was instructed regarding the first type of offense for count 3, trying to prevent or deter an executive officer from performing a duty. This type of offense requires specific intent to interfere with an executive officer's performance of his or her duties. (*People v. Nishi* (2012) 207 Cal.App.4th 954, 967.) It can be established by a threat without physical force. (*In re Manuel G., supra,* 16 Cal.4th at p. 814.) There is no requirement the victim took the threat seriously or the defendant had the present ability to carry out the threat. (*People v. Hamilton* (2009) 45 Cal.4th 863, 936.)

Here, Briceno was uncooperative from the start of his encounter with officer Cummings, who was charged with taking Briceno into custody and transporting him to jail. Briceno acted as though he were unconscious when Cummings initially asked him to get out of the car. Briceno argues on appeal his demeanor in the car was due to pain and shortness of breath. However, Briceno had just refused evaluation and treatment by paramedics. Additionally, when Cummings directed Briceno to get out of the car at the

11

hospital, Briceno looked him in the eye and said, "What are you going to do about it, motherf----r?"

Briceno resisted when Cummings attempted to move Briceno out of the car. When Cummings applied a pain compliance technique, Briceno quickly moved his head backward and then forward six or seven inches in such a manner Cummings was concerned Briceno was going to bite or head-butt him. After Cummings got Briceno out of the car, Briceno turned his body in a threatening manner to face Cummings, causing Cummings to be concerned Briceno was going to spit or head-butt him. When they arrived at the jail, Briceno continued to make threatening statements to Cummings. Briceno told Cummings he was going to "beat your f---in' ass" when Cummings took off the handcuffs.

A reasonable jury could have found Briceno guilty beyond a reasonable doubt, based on the combination of Briceno's refusal to follow orders, physical resistance, and violent threats toward Cummings (both physical and verbal), which were intended to deter Cummings from performing his duties. The fact Briceno did not actually follow through on the threats is of no consequence. (*People v. Iboa* (2012) 207 Cal.App.4th 111, 118 [threatening statements combined with threatening physical behavior constituted a threat of violence prohibited by section 69].) Thus, there was substantial evidence to support the jury's guilty verdict for violation of section 69.

12

## II

### *No Prejudicial Juror Misconduct*

Briceno contends he was deprived of his constitutional right to a fair trial by an impartial jury in case No. SCD253167 and the court erred in denying his motion for a mistrial based on juror misconduct. We are not persuaded.

### A

"A criminal defendant has a constitutional right to trial by an impartial and unbiased jury. [Citation.] A deprivation of that right occurs even if only one juror is biased. [Citations.] [¶] A juror's misconduct … generally raises a rebuttable presumption that the defendant was prejudiced and may establish juror bias." (*People v. Merriman* (2014) 60 Cal.4th 1, 95.) However, "the presumption of prejudice is rebutted, and the verdict will not be disturbed, if a reviewing court concludes after considering the entire record, including the nature of the misconduct and its surrounding circumstances, that there is no substantial likelihood that the juror in question was actually biased against the defendant. [Citations.] Our inquiry in this regard is a 'mixed question of law and fact' subject to independent appellate review. [Citation.] But ' "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*Id*. at pp. 95-96.)

" '[A] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with

13

considerable discretion in ruling on mistrial motions.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 985-986.)

## B

The trial regarding the possession of the razor blade in a penal institution consisted of the testimony of one witness, which lasted less than an hour, the receipt of exhibits, arguments by counsel and instructions by the court. The jury retired for deliberation at 3:13 p.m. on a Friday afternoon and was excused for the day at 4:30 p.m. At the conclusion of the day, the jury submitted a note asking, "By Law, does the admonishment need to be signed? i.e., does the defendant need to sign anything[?] [¶] By Law, does the confession need to be signed? [¶] By Law, is there a requirement for interviews to be audio or video recorded?" As the jurors were leaving, one juror approached the bailiff and indicated another juror had lied during jury selection because the other juror was anti-law enforcement and was refusing to participate in deliberations.

The following Monday, the courtroom clerk received a voice mail from the son of Juror No. 12 (Juror 12) stating his mother was in the hospital and would not be able to continue serving on the jury. He also delivered a nine-page letter from Juror 12 stating she was in the hospital due to a chest pain and respiratory distress as a result of the jury deliberations. The letter indicated it was dictated to an "urgent care triage nurse."

The letter asserted several members of the jury talked about the case during a lunch break prior to deliberations. Once deliberations began, a number of jurors expressed their belief Briceno was guilty and, in heated discussions, bullied and

14

threatened others who believed differently, including this juror. The letter also stated Briceno's absence from trial was mentioned in deliberations.

The court's inclination was to excuse the juror because of her medical or emotional condition, but it did not believe misconduct had occurred, just heated exchanges between jurors. Defense counsel argued the court should inquire regarding misconduct based on the alleged discussions outside the jury room and statements about Briceno's absence from trial.

The court attempted to contact Juror 12 at defense counsel's request, but received no answer. The courtroom clerk spoke to a nurse at the urgent care facility where the juror indicated she received treatment and was told they had no record of treating anyone with the juror's name.

The court denied a request to sequester the jurors from each other, but did conduct individual voir dire with each of the jurors. One juror overheard a remark by another juror to the effect of "So much for not discussing the case." The juror later learned someone made a comment about the bailiff's job, but not the substance of the case. Three jurors indicated Briceno's absence from trial was mentioned, but other members of the jury quickly pointed out it should not be part of their deliberations. One juror stated it was Juror 12 who brought up Briceno's absence and indicated it "matters."

Several jurors expressed concern about Juror 12 and believed she was not truthful during voir dire about her feelings of distrust of law enforcement. One juror reported Juror 12 planned to do outside research. Juror 12 was described as disrespectful,

15

interrupting people and in "combat mode" from the time she walked into the deliberation room.

After interviewing the jurors, the court denied the defense motion for a mistrial on the basis the jury was tainted. The court stated, "I think just the opposite, frankly. I think her credibility, [Juror 12], … I think it's reasonable for the [c]ourt to have serious doubts about her credibility, frankly. I think she has grossly overreacted and we're not even sure—we can't even verify that in fact she is in the hospital." The court noted Briceno's absence may have been mentioned in passing, most likely by Juror 12, but other jurors quickly stopped the discussion.

C

Based on this record, we accept the finding of the trial court regarding the credibility of Juror 12 and conclude the trial court did not abuse its discretion in denying the motion for mistrial. Even if the brief mention of Briceno's absence from the trial was misconduct, we cannot conclude it was prejudicial. " 'Transitory comments' " about failure to testify, or in this case to be present for trial, " 'are normally innocuous, particularly when a comment stands alone without any further discussion.' " (*People v. Avila* (2009) 46 Cal.4th 680, 727.) Similarly, a brief predeliberation discussion about the bailiff's duties, does not suggest bias or prejudicial misconduct.

We are also not persuaded the negative atmosphere in the jury room, if there was one, supports a finding of bias. Heated deliberations do not constitute prejudicial misconduct. (*People v. Keenan* (1988) 46 Cal.3d 478, 541.)

16

" '[T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. The jury system is fundamentally human, which is both a strength and a weakness.  [Citation.]  Jurors are not automatons.  They are imbued with human frailties as well as virtues.  If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.  To demand theoretical perfection from every juror during the course of a trial is unrealistic.' "  (*People v. Danks* (2004) 32 Cal.4th 269, 304.)  There is no evidence of prejudicial misconduct in this case and the court did not abuse its discretion in denying the defense motion for a mistrial.

III

*Sentencing*

Briceno's final contention is the court abused its discretion in denying his *Romero* motion to strike his prior strike conviction when sentencing him for case No. SCD253167, which he contends resulted in a disproportionately lengthy sentence for conduct he characterizes as de minimis.  We do not agree.

Section 1385, subdivision (a), permits a trial court to "strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions." (*Romero*, *supra*, 13 Cal.4th at p. 504.)  However, " 'the [t]hree [s]trikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the

17

[t]hree [s]trikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so." (*Id*. at p. 378.)

In exercising its discretion, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

In this case, the court considered the nature of the felony for which he was being sentenced along with Briceno's criminal history. Briceno had a juvenile record starting with a robbery at knifepoint when he was 17 years old. His adult felony criminal history began when he turned 18 years old and included convictions for possession of 120 pounds of marijuana for sale at the Otay Mesa Port of Entry from Mexico, burglary, possession of a stolen vehicle, drug offenses, evading or resisting police, and numerous parole violations. The court noted a "pattern of ongoing criminality and an inherent disregard for the authority of police and the [c]ourt" and "[p]rior performance on parole was unsatisfactory."

18

Considering these circumstances, the court stated Briceno did not fall outside the intended scope of the three strikes legislation. The court indicated Briceno's possession of a razor blade in a custody facility was similar to strict liability. Even if he possessed it for a nondangerous purpose, its presence had the "potential for great disastrous consequences" in a cell with other inmates.

The court noted Briceno had been shown leniency in prior cases, in which the strike was stricken, but he had not been willing to comply with parole terms and conditions. The court explained the purpose of the three strikes legislation is to punish recidivism (§ 667, subd. (b)) and Briceno's repeated criminality, affinity with weapons, and a disregard of basic rules does not support an exception to the legislative purpose. The court stated, "At this stage in his life in his criminality, there are no minor criminal offenses." Based on this record, we find no abuse of discretion.

## DISPOSITION

The judgments are affirmed. The trial court is directed to amend the abstract of judgment with regard to case No. SCD253167 to indicate (1) Briceno was convicted of possession of a "sharp instrument" as opposed to a deadly weapon in jail in violation of section 4502, subdivision (a); and (2) the date of conviction for this count was May 12, 2014, as opposed to April 25, 2014. The court is also directed to forward a

certified copy of the amended abstract of judgment to the Department of Corrections and

Rehabilitation.

MCCONNELL, P. J.

WE CONCUR:

MCDONALD, J.

AARON, J.