Filed 11/9/20  P. v. Scott CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ROYAL SCOTT, JR.,<br><br>　　　Defendant and Appellant. | A159335<br><br>(Contra Costa County<br>Super. Ct. No. 5-190233-7) |

　　　A jury convicted appellant Royal Scott, Jr. of one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1))[1] and acquitted him of other charges arising out of an altercation with his fiancé.  He contends the trial court erred by directing the jury to two instructions already given in response to a note sent during deliberations asking for a legal definition of "possession" and "control" for purposes of the felon with a firearm statute.  We affirm.

## I.  BACKGROUND

　　　Appellant and Jane Doe were in a relationship and lived together in an apartment.  Appellant was a painter by trade.  On

_____

[1] Further statutory references are to the Penal Code unless otherwise indicated.

August 26, 2018, Doe started an argument with appellant inside the master bedroom. Doe, who was intoxicated, was angry at appellant because he had stayed out all night. Appellant called the police.

Pittsburg Police Department Officer Jesus Arellano responded to the call. Appellant opened the door and said there had been an altercation, but everything was fine. Officer Arellano entered the apartment and spoke to Doe, whose right cheek was red. She claimed that appellant had knocked her cell phone out of her hands and had slapped her and tried to kick her. She also claimed that appellant had retrieved a firearm from the closet, pointed it at her, and told her to "[g]et the fuck out" before placing it back in the closet.

Officer Arellano located a shotgun in the master bedroom closet, which was unloaded but in working condition. The clothing inside the closet where the gun was found belonged to a male, and appellant told Officer Arellano he had found the shotgun at a vacant house he had been painting. According to appellant, Doe was not with him at the time and he was planning to sell the shotgun at a gun show. Appellant had previously been convicted of a felony.

Appellant was charged with inflicting corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)), possession of a firearm by a felon (§ 29800, subd. (a)(1)), exhibiting a firearm (§ 417, subd, (a)(2)(B)) and dissuading a witness (§136.1, subd. (b)(1)). At the jury trial on these charges, Doe testified that appellant did not strike her or point a firearm at her, and that she had made

2

up the charges because she was intoxicated and angry. She claimed that in June or July of 2018, she was helping appellant prepare a vacant apartment for painting and discovered a shotgun inside. She told appellant they could sell it in a "buyback" program and wrapped it up in a drop cloth to take it home, where she placed it inside their master bedroom closet.

Appellant testified that on the night of the altercation, he had just tried to leave to avoid an argument. Doe could be difficult and controlling, particularly when she was drinking. Appellant testified that both he and Doe kept clothes inside the master bedroom closet and that he had nothing to do with the gun. He denied handling it or possessing it in any way and testified that he did not even know where it was stored. He admitted knowing Doe had taken the gun.

The jury acquitted appellant of all charges except the felon with a firearm count. The court placed appellant on three years of probation for the conviction of that count, conditioned upon the service of 120 days jail time, which could be served at home under the electronic home detection program.

## II.  DISCUSSION

Appellant argues the court did not adequately respond to a question asked by the jury during deliberations, and that he was deprived of due process as a result. We disagree. Appellant invited any error or forfeited the claim when his trial attorney proposed the response ultimately given by the court, and he has not demonstrated that his attorney provided ineffective assistance of counsel.

3

A. *Background*

The issue in dispute on the felon with a firearm count was whether appellant was in possession of the shotgun Officer Arellano found in the closet. "A defendant has actual possession when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others." (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083–1084; see also *People v. White* (2014) 223 Cal.App.4th 512, 524.)

The People proceeded under a theory of constructive possession. The court provided the jury with CALCRIM No. 2511[2] which advised the jury the prosecution was required to

---

[2] CALCRIM No. 2511 provided, "The defendant is charged in Count Two with unlawfully possessing a firearm. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant knew that he possessed a firearm; [¶] AND [¶] 3. The defendant had been previously convicted of a felony. [¶] A *firearm* is any device designed to be used as a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion. [¶] A firearm does not need to be in working order if it was designed to shoot and appears capable of shooting. [¶] Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person. [¶] The defendant and the People have stipulated, or agreed, that the defendant was previously convicted of a felony. This stipulation means that you must accept this fact as proved. [¶] Do not consider this fact for any other purpose. Do not speculate about or discuss the nature of the conviction."

4

prove, "[t]he defendant possessed a firearm" and "[t]he defendant knew that he possessed a firearm." It stated that "[t]wo or more people may possess something at the same time" and "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." The court also instructed the jury with CALCRIM No. 200, which stated in part, "Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

During deliberations, the jury submitted the following note to the court, "Can you please provide a legal definition of the terms 'possession' and 'control' for purposes of Count 2511 [sic] Penal Code 29800(a)[(1).]" The court asked for input from the attorneys and defense counsel responded, "My request is to direct the jury to the law contained in the CALCRIM that they're citing, the law—the relevant law—something to the relevant law—or please refer to CALCRIM 2511 for the relevant law as to these issues or something." The prosecutor agreed that would be appropriate.

The court responded, "So we should refer them to 2511 and also just CALCRIM 200 without emphasizing any particular part of 200. But there is a paragraph in 200 that talks about

5

definitions and meanings." Defense counsel confirmed, "I'm fine with that," and the court summarized its proposed response as, "Please review instructions 200 and 2511." It asked if either side wished to be heard and defense counsel declined. The jury was so instructed.

B. *Section 1138*

Section 1138 requires trial courts to respond to questions through which the jury "desire[s] to be informed on any point of law arising in the case. . . ." In discharging this obligation, trial courts must "help the jury understand the legal principles it is asked to apply." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)

While it is true that section 1138 obligates trial courts " 'to clear up any instructional confusion expressed by the jury' " (*People v. Loza* (2012) 207 Cal.App.4th 332, 355), this does not necessarily mean that the court always must elaborate on the standard instructions. If the instructions given were full and complete, the court has broad discretion to determine whether any additional explanation is needed in formulating a response to a jury's question on a point of law. (*People v. Williams* (2015) 61 Cal.4th 1244, 1267; *People v. Iboa* (2012) 207 Cal.App.4th 111, 121; *People v. Montero* (2007) 155 Cal.App.4th 1170, 1178–1180 (*Montero*) [court did not abuse its discretion in referring the jury back to instructions already given in response to their request for clarification of "control" in methamphetamine possession case].)

C. *Forfeiture or Invited Error*

Any section 1138 error was forfeited or invited by appellant's trial attorney. It was appellant's attorney who

proposed the basic contours of the response the trial court gave. Because appellant's attorney invited the trial court's response to the jury's question, this alleged error cannot form the basis for reversal of appellant's conviction. (*People v. Harris* (2008) 43 Cal.4th 1269, 1317 ["He has waived this argument by specifically agreeing below to the court's handling of the jury's question"]; *People v. Murtishaw* (1989) 48 Cal.3d 1001, 1022 [the defendant's attorney invited the trial court's purported section 1138 error by proposing the response to the jury's question that the court gave]; *People v. Thoi* (1989) 213 Cal.App.3d 689, 698 [the defense attorney invited any section 1138 error by "actively and vigorously lobb[ying] against further instruction," which was the course the trial court took in responding to the jury's query].)

D. *The Court's Response Satisfied section 1138*

In any event, the trial court did not err in responding to the jury's note by referring them back to the instructions given. CALCRIM No. 2511 did not use the term "constructive possession," but it adequately advised the jury of that concept. It informed the jury that a person does not have to hold or touch something to possess it; thus, physical control is unnecessary. The instruction informed the jury that control or the right to control is sufficient. CALCRIM No. 2511 also properly instructed the jury on the knowledge element; i.e., that appellant must have known that he possessed the firearm.

Appellant nonetheless argues that because the jurors expressed confusion over the meaning of "possession" and "control," the court should have clarified the meaning of those

7

terms in response to the jury's note.  He relies primarily on *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*), disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, in which the court noted that mere proximity to a weapon does not supply sufficient evidence that the defendant possessed it.

In *Sifuentes*, the defendant was discovered in a motel room lying on one bed while another man kneeled next to the other. (*Sifuentes*, *supra*, 195 Cal.App.4th at pp. 1413–1414.)  He was convicted of possessing a firearm found under the mattress of the bed next to the other man.  (*Id*. at p. 1416.)  The court found this evidence was insufficient to prove constructive possession because there was no substantial evidence the defendant had the right to control the firearm, or even that he knew it was in the room.  (*Id*. at pp. 1417–1418.)

That the facts of *Sifuentes* were held insufficient to prove firearm possession does not mean the instructions given in this case were lacking.  *Sifuentes* did not involve instructional error at all, and appellant does not challenge CALCRIM No. 2511 as inadequate.  CALCRIM No. 2511 "did not have to offer more than it already did.  The instruction requires the defendant to have control. . . .  Under this language, the jury could not find defendant guilty simply due to his proximity. . . .  No reasonable juror would have believed that proximity alone equaled control." (*Montero*, *supra*, 155 Cal.App.4th at p. 1180.)

E. *Ineffective Assistance of Counsel*

Appellant argues that if his trial counsel forfeited his challenge to the court's response or invited the error, he provided ineffective assistance of counsel in doing so. We disagree.

A defendant claiming ineffective assistance of counsel must show first, that his or her attorney's representation fell below an objective standard of reasonableness under the prevailing professional norms, and second, that there is a reasonable probability, sufficient to undermine confidence in the outcome, that the defendant would have obtained a more favorable result absent the error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 693–694; *People v. Vines* (2011) 51 Cal.4th 830, 875–876, overruled on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 104.) In determining whether an attorney's representation met professional norms, appellate courts generally will defer to " 'reasonable tactical decisions' " the attorney made, and there is a " ' "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] [A d]efendant's burden is difficult to carry on direct appeal. . . .' " (*Vines, supra*, 51 Cal.4th at p. 876.) Indeed, " ' " '[r]eviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " ' " (*Ibid*.)

In this case, we can readily perceive that counsel had a tactical purpose in asking that the court merely direct the jury back to the CALCRIM instructions already given—he may have

9

believed that it was advantageous to his client to do so. Counsel may have thought that if the jurors were uncertain about whether possession and control had been established under the instructions given, it was better not to provide them with an additional instruction that might convince them possession had been proved beyond a reasonable doubt. Appellant has not carried his burden of demonstrating that counsel did not have a valid tactical reason for proposing the response he did. (*People v. Orloff* (2016) 2 Cal.App.5th 947, 955–956.)

Even if we were to assume counsel lacked a tactical purpose and should have proposed an additional instruction, appellant has not demonstrated that it is reasonably probable this would have led to a more favorable result. Although appellant does not tell us the exact language of the supplemental instruction he thinks his counsel should have proposed, his reliance on the *Sifuentes* case suggests it would have been something to the effect that proximity was insufficient to prove possession. But CALCRIM No. 2511 required the prosecution to prove that appellant controlled or had the right to control the firearm—the jury would not have believed, under the instructions given, that mere proximity was sufficient. (*Montero*, *supra*, 155 Cal.App.4th at p. 1180.)

## III.    DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, Acting P.J.

We concur.

_____

BURNS, J.

_____

REARDON, J. *

*People v. Scott* / A159335

_____

* Judge of the Superior Court of Alameda County, assigned
by the Chief Justice pursuant to article VI, section 6 of the
California Constitution.