[No. AO25220. First Dist., Div. Three. Feb. 8, 1984.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
NATHANIEL ANDERSON, Real Party in Interest.

**COUNSEL**

Arlo Smith, District Attorney, and Alfred F. Giannini, Assistant District Attorney, for Petitioner.

No appearance for Respondent.

Jeff Brown, Public Defender, Peter G. Keane, Chief Attorney, Teri Sklar, Grace Lidia Suarez and Donna Teshima, Deputy Public Defenders, for Real Party in Interest.

**OPINION**

**FEINBERG, J.**—Penal Code section 69 prescribes punishment for "[e]very person who attempts, by means of any threat or violence, to deter or prevent

an executive officer from performing any duty imposed upon such officer by law." The superior court has ruled this section overbroad because it could be used against one who threatened lawful conduct, such as to file a lawsuit or run for elected office. The People seek to cure this overbreadth by a narrowing construction which makes the statute applicable to threats of violence but not to threats of lawful conduct. We accept the People's construction, and issue peremptory writ of mandate.

Real party in interest Nathaniel Anderson, also known as Charles Windsor, was charged by complaint with threatening Mayor Dianne Feinstein, in violation of Penal Code section 71.[1] Evidence presented at the preliminary examination showed that he had written a letter demanding the mayor's resignation and threatening to kill her if she did not resign. Though the letter was found in an envelope addressed to "The Retired Officers Assn." at San Francisco Post Office Box 1948, the recipient forwarded it to the mayor's office. The magistrate held real party to answer for the violation of Penal Code section 71.

In superior court, the People filed an information charging violation of both Penal Code section 69 and Penal Code section 71 (see Pen. Code, § 739.) Real party moved to dismiss both charges pursuant to Penal Code section 995. The court granted the motion as to the Penal Code section 69 charge (count II), but denied as to the section 71 charge (count I). This petition followed.

 The People concede that Penal Code section 69 is overbroad because it could be used to punish a person for threatening lawful conduct. They argue that the trial court was obligated to construe the section narrowly in order to cure its overbreadth. They suggest that if the statute were made applicable only to threats of unlawful violence, it would both accomplish its purpose and operate only against threats which the Legislature may properly prohibit.

 "Two principles of statutory construction govern whether a statute or ordinance suffering overbreadth may be construed so as to avoid conflict with the Constitution. First, the enactment may be validated if its terms are reasonably susceptible to an interpretation consistent with the constitution. [Citations.] Second, the court should construe the enactment so as to limit its effect and operation to matters that may be constitutionally regulated or

---

[1]Penal Code section 71 provides in part: "Every person who, with intent to cause, attempts to cause, or causes, any officer or employee of any public or private educational institution or any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense punishable as follows: . . . "

prohibited. [Citations.] [¶] Both principles are limited by the further rule that judicial construction must not create uncertainty inhibiting exercise of a constitutional right. [Citations.]" (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 505-506 [134 Cal.Rptr. 668, 556 P.2d 1119], construing an ordinance so as not to apply to defendant's sale of maps showing the locations of movie star homes.)

Real party argues that even if construed to apply only to threats of violence, it would make criminal some protected activities. He gives two examples of threats he contends would be protected by the First Amendment to the United States Constitution: (1) "The angry taxpayer who raves to his bartender 'if that new cop on the block doesn't stop ticketing my car, I'm going to punch him in the nose'" and (2) the threat in *Watts* v. *United States* (1969) 394 U.S. 705 [22 L.Ed.2d 664, 89 S.Ct. 1399], where the defendant said to a political gathering that "if inducted into [the] Army (which he vowed would never occur) and made to carry a rifle 'the first man I want to get in my sights is LBJ.'" Real party notes that these statements constitute protected speech because they are not real threats of imminent injury, but are what is commonly called "political hyperbole." He contends that unless the statute is interpreted to require the element of imminence or plausibility to the threat, a requirement not suggested by petitioner, the statute cannot be saved by construction.

Real party's argument is sound in structure. However, it rests upon the fallacious premise that Penal Code section 69, as construed to apply only to threats of violence, would apply to real party's examples and to other similar threats.

The premise founders upon examination of *Watts* v. *United States, supra,* 384 U.S. 705, and the wording of section 69. In *Watts*, the statute prohibited any person from "'knowingly and wilfully . . . [making] any threat to take the life of or to inflict bodily harm upon the President of the United States . . . .'" The *Watts* court found the statute constitutional on its face. Thus, facial validity did not require wording which would exclude political hyperbole. Instead, the court held that such statements were not "threats" within the meaning of the statute.

Penal Code section 69, construed to apply only to threats of violence, is quite similar to the statute involved in *Watts*. No further construction is required once there is acknowledgment of the *Watts* conclusion that political hyperbole cannot be punished as a threat.[2]

---

[2]See *United States* v. *Kelner* (2d Cir. 1976) 534 F.2d 1020 [34 A.L.R.Fed. 767], cert. den., 429 U.S. 1022 [50 L.Ed.2d 623, 97 S.Ct. 639], for a more expansive discussion of *Watts* and the distinction between threats and political hyperbole.

Another feature of section 69 is significant: It requires more than a threat. Indeed, its central requirement is an *attempt to deter the executive officer.* Threat (of violence) or violence is merely the means for making the attempt to deter. Thus, if the angry taxpayer in real party's first example either does not expect the comments to reach the "cop" or does not expect the officer to take the threat seriously (the two inferences the reader is expected to draw), he has not made an attempt to deter the officer. If he *does* expect word to reach the officer and the officer to believe the threat, then his speech is not protected political hyperbole but a wrongful interference with public duty. Similarly, if the war protester in *Watts* were trying to affect presidential action not by the force of a political idea stated in hyperbole, but "by means of" his threat of violence, the protection afforded by the United States Supreme Court would not apply. If a threat of violence is the tool for *attempting* to interfere with executive action, the act is not excused by the fact that the actor does not presently have the executive officer in the sights of his gun.

 Ignoring the fact that section 69 focuses upon an attempt to deter an executive officer, real party contends that it is improper to punish as a felony a threat to commit only such minimal violence as a "shove," which itself would be punishable only as a misdemeanor. Assuming, but not deciding, that real party is correct that First Amendment considerations preclude punishing as a felony a threat to commit a misdemeanor, that conclusion would not affect this case. Section 69 is directed not at the threat itself, but at the attempt to deter executive action. If a threat to commit a misdemeanor were found by the trier of fact to be a serious attempt to deter executive action, the degree of the force threatened would not be significant. Its significance would have been in argument to the trier of fact that the threat was mere political hyperbole, not a serious attempt to deter executive action.

The trial court's ruling here was apparently triggered at least in part by the recent opinion of the United States Court of Appeals for the Ninth Circuit in *Wurtz* v. *Risley* (1983) 719 F.2d 1438, 1439. There the court addressed a Montana statute punishing intimidation: "(1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts: . . . (c) commit any criminal offense . . . ." In a discussion of many of the cases cited by the parties to this proceeding, the Ninth Circuit ruled that the statute was overbroad because it would encompass threats of a relatively harmless criminal behavior. The *Wurtz* court declared the statute void because the Montana Supreme Court had considered the case and failed to give the statute a narrowing construction.

The problem confronted by the Ninth Circuit does not exist here. A decision by this court construing the statute within constitutional limits will save the statute. Where possible, such a construction should be given. (Cf. *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 253 [158 Cal.Rptr. 330, 599 P.2d 636].) ▮ Petitioner's proposed construction meets constitutional objections and we adopt it. The statute being valid and the evidence taken at the preliminary examination being sufficient to sustain the charge, the superior court erred in dismissing count II of the information.

Let a peremptory writ of mandate issue directing the San Francisco County Superior Court to vacate its decision dismissing the Penal Code section 69 charge against real party and to enter a new order denying in full real party's motion to dismiss.[3]

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied March 6, 1984, and the petition of real party in interest for a hearing by the Supreme Court was denied April 19, 1984.

---

[3]By issuing the alternative writ we implicitly rejected real party's several procedural arguments against issuance of writ of mandate. (See *Atlas Plastering, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 63, 68 [140 Cal.Rptr. 59].) It is true that our action preceded the filing of real party's brief. However, the considerations raised by real party were apparent to us when we ordered issuance of the alternative writ.