**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

JONATHAN JOSEPH LINCOLN,
      *Defendant-Appellant.*

No. 04-30040

D.C. No.
CR-02-00208-RE

OPINION

Appeal from the United States District Court
for the District of Oregon
James A. Redden, District Judge, Presiding

Argued and Submitted
December 6, 2004—Portland, Oregon

Filed April 8, 2005

Before: Thomas G. Nelson, Johnnie B. Rawlinson,
Circuit Judges, and William W Schwarzer,*
Senior District Judge.

Opinion by Judge Rawlinson

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

## COUNSEL

Michael R. Levine, Portland, Oregon, for defendant-appellant Jonathan Joseph Lincoln.

Frank Noonan, Assistant United States Attorney, Portland, Oregon, for plaintiff-appellee United States of America.

## OPINION

RAWLINSON, Circuit Judge:

Jonathan Joseph Lincoln (Lincoln) was convicted of knowingly and willfully threatening the life of the President of the

United States in violation of 18 U.S.C. § 871. The charge arose from statements made in a letter dated September 24, 2001 that Lincoln attempted to mail while incarcerated at the Oregon State Penitentiary. The district court acknowledged that the letter itself was not a "true threat," but determined that a true threat blossomed from the "context" in which the statements were made. Because we conclude that the contextual background did not transform Lincoln's letter into a threat, we reverse Lincoln's conviction.

## I.

## *BACKGROUND*

During his incarceration, Lincoln participated in anger management classes. The classes included a requirement that Lincoln write in a workbook. In March of 2001, prison officials contacted Special Agent Ronald Wampole and informed him that Lincoln had written statements in the workbook that threatened the life of President Bush.[1] Approximately a month later, on April 4, 2001, Agent Wampole interviewed Lincoln at the prison.

Agent Wampole testified that the purpose of the interview was to assess the degree of threat Lincoln posed to the President. The interview took place in an attorney-client room within the prison. Lincoln was not compelled to remain in the room, although he could not leave unless he summoned a

---

[1]On page 2 of the workbook, Lincoln wrote: "1. Kill people; 2. Kill Bush; 3. Kill Bush wife; 4. Kill the FBI." On page 4, Lincoln wrote: "Something [sic] you have fun when you kill the President like Bush or Bill Cliton [sic] or his wife." On page 5, Lincoln wrote: "Kill Bush, Kill Bush, Kill Bush" and "President shread [sic] his body up into little pieces Kill his wife famialy [sic]." On page 9, Lincoln wrote that he is going to shoot the President with a 30-06 rifle that would put a hole in the President 3-1/2 inches wide. Lincoln was not prosecuted for the statements made in the workbook.

guard to let him out. Lincoln was not advised of his *Miranda* rights.

Agent Wampole related that Lincoln was cooperative and spoke freely, explaining to Agent Wampole exactly what he had done, why he had done it, and what he was planning. Lincoln stated that when he got out of prison, he was planning to get a group of people together from Seattle to travel to Washington, D.C., stake out the White House and shoot the President through an open limousine window. Agent Wampole recalled Lincoln stating that he did not really mean the threats, although, on cross-examination, Agent Wampole testified to the contrary. Agent Wampole presented these statements to the United States Attorney for possible prosecution, but no charges were brought.

About six months later, on September 24, 2001, Lincoln attempted to mail a letter to President Bush. The letter read:

> President Goerge [sic] W Bush
>
> you think cause [sic] you go over There and Blow Them up that The killing will Stop in you [sic] Dream They got over 275,800 or more since, Never mind that this is only the Beging [sic] of the Badass war To come Just think Their army is over here already hiding They have more Posion gas Then [sic] you know. ha ha. Too bad you don't think Like Them. You will see a good Job Done agin [sic] may [sic] 2 week's, [sic] maybe 2 months, 3, who know's [sic]. You Will Die too George W Bush real Soon They Promissed [sic] That you would Long Live *BIN LADEN*.

Prison officials forwarded the letter to Agent Wampole. Agent Wampole in turn transmitted a report to the United States Attorney. Lincoln was subsequently indicted for one

count of willfully and knowingly threatening the life of the President in violation of 18 U.S.C. § 871.[2]

After a one-day bench trial, the district court issued an order and opinion finding the defendant guilty of threatening the life of President George W. Bush, by depositing in the mail the September 24th letter containing such a threat, in violation of 18 U.S.C. § 871. During trial, Lincoln sought to suppress the workbook writings and his statements to Agent Wampole. He also moved for an acquittal. The district court ruled that the statements in the workbook fell into the "dangerous patient" exception to the patient-psychotherapist privilege and could be considered as part of the context for Lincoln's letter. The district court denied Lincoln's motion to suppress the statements made to Agent Wampole because they constituted a "new crime." Finally, the court determined that the letter, when considered in the context of the threats made in the workbook and the statements to Agent Wampole, constituted a "true threat."

Before Lincoln was sentenced, we decided *United States v. Chase*, 340 F.3d 978, 979 (9th Cir. 2003) (en banc), holding that there is no "dangerous patient" exception to the patient-psychotherapist privilege. As a result, Lincoln renewed his motion to suppress the workbook statements. The court granted the motion, concluding that *Chase* mandated a finding that the workbook statements were privileged. However, the court re-affirmed Lincoln's conviction on the basis that Lincoln's statements to Agent Wampole provided adequate con-

---

[2]This section states, in part:

"Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter . . . containing any threat to take the life of, . . . or to inflict bodily harm upon the President of the United States . . . shall be fined under this title or imprisoned not more than five years, or both."

18 U.S.C. § 871(a).

text to support a conclusion that the letter was a true threat. Lincoln appealed, claiming that the district court erred in denying his Rule 29 motion seeking acquittal for lack of sufficient evidence.

## II.

### *STANDARDS OF REVIEW*

"The district court's denial of a motion for a judgment of acquittal is reviewed *de novo*." *United States v. Rojas-Flores*, 384 F.3d 775, 778 (9th Cir. 2004) (citation omitted). "[V]iewing the evidence in the light most favorable to the government, we must determine whether any rational trier of fact could have found, beyond a reasonable doubt, the requisite elements of the offense charged." *United States v. Pearson*, 391 F.3d 1072, 1075 (9th Cir. 2004) (citation omitted).

In speech cases, we "defer[ ] to the [factfinder's] findings on all but the constitutional facts." *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002). "Constitutional facts are facts-such as . . . whether a statement is a true threat-that determine the core issue of whether the challenged speech is protected by the First Amendment." *Id*.

## III.

### *DISCUSSION*

**[1]** In *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court stated that because 18 U.S.C. § 871 makes criminal certain forms of pure speech, "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 707. Thus, "the statute initially requires the Government to prove a true 'threat.' " *Id.* at 708. We have defined a true threat under § 871 as:

> a statement, written or oral, [made] in a context or under such circumstances wherein a reasonable per-

son would foresee that the statement would be inter-
preted by those to whom the maker communicates
the statement as a serious expression of an intention
to inflict bodily harm upon or to take the life of the
President.

*Hanna*, 293 F.3d at 1084 (citation and alteration omitted).

## A.  The letter itself is not a true threat

**[2]** The district court acknowledged that the letter, standing
alone, could not support a conviction under § 871. As the dis-
trict court stated:

> Defendant's letter states that President Bush will die
> soon because an unidentified "they" promised he
> would. The "they" appears from the context of the
> letter to refer to Bin Laden followers (the Taliban, Al
> Queda [sic], or the like). The letter does not state or
> even suggest that the President *should* be killed.
> Rather, the letter expresses the opinion that "they"
> will kill him. Further, defendant may have been try-
> ing to disassociate himself from any violent action to
> which he referred by twice crossing out the words
> "us" and "we" and substituting the words "they" and
> "them."

(emphasis in the original). Even considered in the light most
favorable to the government, no reasonable person could fore-
see that this letter would be perceived by its recipient as a
serious threat to the life of the President.

## B.  The letter is not a true threat even when considering the context referenced by the district court

The district court held that Lincoln's statements to Agent
Wampole were a proper part of the "context" for Lincoln's

letter, and in that context, the letter constituted a "true threat." Although it was appropriate for the district court to consider the statements to Agent Wampole as part of the "entire factual context," *Hanna*, 293 F.3d at 1087 (citation omitted), the district court nevertheless erred in holding that the letter constituted a true threat. This case is markedly different from *Planned Parenthood v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc), on which the district court relied. In *Planned Parenthood*, we found that the placing of pictures of abortion doctors on "wanted" posters constituted a true threat,[3] although the posters themselves were not threatening. *Id.* at 1085-86. It was in the context of the "poster pattern" that the threatening nature of the posters became evident. *Id.* Three doctors who appeared on similar posters were subsequently murdered. *Id.* In addition, at least some of the defendants were aware that, because of the previous murders, the posters invoked fear in the doctors who appeared on them. *Id.* at 1065-66. Thus, the posters were true threats because, "like Ryder trucks[4] or burning crosses, they connote something they do not literally say, yet both the actor and the recipient get the message." *Id.* at 1085.

**[3]** Lincoln's letter does not connote anything that it does not literally say. To the contrary, it literally says what it means, that President Bush will die because "they" said he will. The fact that Lincoln stated six months earlier that he planned to shoot the President does not give new meaning to Lincoln's statement that Bin Laden or Al Qaeda will kill the President. Any holding to the contrary conflicts with the dis-

---

[3]Although *Planned Parenthood* was a civil case brought under the Freedom of Access to Clinics Entrances Act (FACE), 18 U.S.C. § 248, we used "true threat" analysis to define a "threat of force" under FACE. *Planned Parenthood*, 290 F.3d at 1062-63, 1068.

[4]This reference is to an Eighth Circuit case holding that the parking of Ryder trucks in the driveway of an abortion clinic by a known anti-abortion activist was a true threat because Ryder trucks were used in the Oklahoma City bombing. *Planned Parenthood*, 290 F.3d at 1078-79 (citing *United States v. Hart*, 212 F.3d 1067 (8th Cir. 2000)).

trict court's express finding that Lincoln disassociated himself from any violent action "by twice crossing out the words 'us' and 'we' and substituting the words 'they' and 'them.' "

Lincoln's letter differs from the "wanted" posters in *Planned Parenthood* because in that case there was a clear pattern of appearance on a poster followed by murder. It was this "poster pattern" that gave the otherwise innocuous posters their threatening portent. *Planned Parenthood*, 290 F.3d at 1085-86. In this case, there is no pattern of letters written by Lincoln, followed by murder or any other act. There was only one letter written by Lincoln. Unlike the single letter in this case, the "wanted" posters were publicly posted on the internet, and thus could be reasonably interpreted as a signal to unknown third parties to target those who appeared on the posters. In contrast, Lincoln's letter was to be sent only to President Bush. In no way could the letter be reasonably viewed as a signal to Al Qaeda or anyone else to carry out an attack upon President Bush.

**[4]** Because § 871 criminalizes a form of pure speech, it "must be interpreted with the commands of the First Amendment clearly in mind." *Watts*, 394 U.S. at 707. So interpreted, the letter in this case was Lincoln's crude and offensive method of stating political opposition to the President, and such political hyperbole does not constitute a "threat" under § 871. *See id*. at 708. Although the language used was disturbing, Lincoln was exercising his constitutional right to endorse the violent actions of Bin Laden and Al Qaeda, which is protected speech. *See Planned Parenthood*, 290 F.3d at 1072 ("If [defendants] had merely endorsed or encouraged the violent actions of others, [their] speech would be protected."). Lincoln's letter was more akin to the protected statement made by the defendant in *Watts*[5] than to the wanted posters at issue in *Planned Parenthood*.

---

[5]In *Watts*, the defendant stated: "If they ever make me carry a rifle the first man I want to get in my sights is [President] L.B.J." *Watts*, 394 U.S. at 706. The United States Supreme Court reversed Watts' conviction, holding that his statement was "a kind of very crude offensive method of stating a political opposition to the President." *Id*. at 708.

## IV.

## *CONCLUSION*

**[5]** There was insufficient evidence to support Lincoln's conviction. The context of Lincoln's statements did not give new meaning to what his letter plainly stated. Even viewed in the light most favorable to the government, the letter did not constitute a true threat, and cannot support a conviction under § 871.

**REVERSED.**