Filed 5/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

THE PEOPLE,
Plaintiff and Respondent,
v.
ANATOLY SMOLKIN,
Defendant and Appellant.

A155891

(Solano County
Super. Ct. No. FCR328898)

Angry at the Solano County District Attorney's Office for its handling of his parole violation case, appellant Anatoly Smolkin (Appellant) sent a two-page letter to that office in 2017 that may kindly be described as disordered. The letter stated, among other things, that the deputy prosecutor who handled the violation proceedings, Andrew Horvath, had been "sentenced to death in Moscow for the crime of kidnapping a soldier of the armed forces of Russia." In August 2018, a jury convicted Appellant of resisting an executive officer, in violation of Penal Code section 69.[1] On appeal,[2] Appellant argues that, where a conviction under section 69 is based

[1] All undesignated statutory references are to the Penal Code.

[2] In September 2019, this court rejected Appellant's challenge to the sufficiency of the evidence supporting his conviction. (*People v. Smolkin* (Sept. 16, 2019, A155891) [nonpub. opn.].) Appellant filed a petition for review, and the California Supreme Court directed this court to reconsider in light of Senate Bill No. 136 (Stats. 2019, ch. 590) (SB 136), a sentencing reform measure. Subsequently, we granted a request by Appellant's new

on a threat, it must be a “true threat” for the conviction to be constitutional under the First Amendment. Although we do not adopt Appellant’s construction of the “true threat” requirement, we reverse the conviction, concluding on the specific facts of this case that a reasonable listener would not have found the delusional letter underlying the conviction “ ‘a serious expression of an intent to commit an act of unlawful violence.’ ” (*People v. Lowery* (2011) 52 Cal.4th 419, 424 (*Lowery*).)

BACKGROUND

Deputy District Attorney Andrew Horvath was employed by Solano County District Attorney Krishna Abrams. Horvath testified that, in August or September of 2016, he prosecuted Appellant for parole violations. One of them involved an incident during which Appellant threatened to blow up a parole office building. Appellant was found in violation of his parole and sentenced to 180 days in county jail.

On February 28, 2017, Horvath received a handwritten letter by Appellant that had been addressed to District Attorney Abrams and routed to Horvath. The letter is attached as an appendix to this decision. It stated that Appellant was a member of Russian military intelligence and that Horvath had been “sentenced to death in Moscow for the crime of kidnapping a soldier of the armed forces of Russia.”[3] The letter continued, “I am scheduled to be released from my current incarceration, 6 MAR 2017. I warn you, if charges are not dropped, all perjured restraining orders lifted, my parole cancelled, I will charge, but effectively sentence, the entire Solano

counsel to expand the issues to assert a new claim that the conviction under section 69 violated his First Amendment rights. (U.S. Const., 1st Amend.)

[3] Psychiatric reports reflect Appellant has a persistent delusion that he is a Russian military operative fighting the American government.

County DA's office with kidnapping punishable by death by Russian military firing squad. Let me be crystal clear—I have no training in riflery or authorization to carry out an execution: what I am saying is that if I have to report to parole on 7 MAR 2017, before 31 Dec 2017 your entire office will be arrested by Russian military police, tried in a rubber stamp trial for kidnapping, and sentenced to death by firing squad… My only part in the execution, as psyops officer, will be to livestream it on Facebook." The letter also stated in small text in a margin, "It is clear to any rational person that I pose no threat to anybody." At the end of the letter, Appellant repeated, "Once again, I am not authorized to, nor will I, take any actions that violate California laws—Am threatening formal, official foreign military force & justice."[4]

Horvath testified the letter put him in fear of Appellant. He did not literally believe he had been sentenced to death by a Russian military firing squad. Horvath explained that, "based on . . . [Appellant's] past history, what he had done to be put on parole . . . . I was concerned more along the lines that he was making these threatening statements talking about death, saying that I had been sentenced to death. My biggest concern was . . . that I was basically on his radar; that he knew who I was and . . . based on previous things he had done, I was concerned now for my safety as to what could happen to me moving forward." As a result of the letter, Horvath installed a security system in his home, warned his wife to be vigilant, and told his

[4] Appellant points out that the February 2017 letter, albeit delusional, alluded to political matters. For example, the letter referred to Russian hacking, Russian bombing of a United States base in Syria, and the then recent separate events involving Michael Flynn and the Russian consulate in San Francisco. We do not hold that a threat must have a political dimension (or an artistic or other dimension of arguable social value) for it to receive First Amendment protections.

children not to talk to strangers. When Horvath described his security measures at Appellant's preliminary hearing, Appellant said, "it won't help when my jets show up."

In July 2018, the Solano County District Attorney filed an information charging Appellant with threatening a state official (§ 76, subd. (a)) and resisting an executive officer (§ 69). The information also alleged a prior strike (§§ 667, subd. (d) & 1170.12, subd. (b)) and a prior prison term (§ 667.5, subd. (b)). In August 2018, a jury acquitted Appellant of threatening a state official and convicted him of resisting an executive officer. The trial court found the enhancement allegations true. In November 2018, the trial court sentenced Appellant to seven years in state prison, comprised of the upper term of three years, doubled to six years due to the prior strike conviction, with an additional year due to the prior prison term.

DISCUSSION

Section 69, subdivision (a), provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." Appellant does not dispute a threat to a deputy district attorney is within the scope of the statute or that sufficient evidence supports a finding that the February 2017 letter was intended to deter Horvath from performing his duties. Instead, on transfer from the California Supreme Court, he argues for the first time that his conviction under section 69 was unconstitutional.

"The First Amendment states that 'Congress shall make no law . . . abridging the freedom of speech.' [Citation.] This proscription, as incorporated through the Fourteenth Amendment's due process clause, likewise binds the states. [Citation.] The provision is not absolute, however. Not within the First Amendment's protection are ' "certain well-defined and narrowly limited classes of speech" '—those ' " 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." ' [Citations.] Falling into that category are what the United States Supreme Court has described as 'true threats.' " (*Lowery*, *supra*, 52 Cal.4th at p. 423; see also *Virginia v. Black* (2003) 538 U.S. 343, 359; *Watts v. United States* (1969) 394 U.S. 705, 708 (*Watts*); *In re M.S.* (1995) 10 Cal.4th 698, 712 [stating "*Watts* made clear the Constitution mandates" that statutes "punishing the making of threats" must be applied only "to true threats"].) These principles apply in the context of section 69, which presents the same risk of punishing protected First Amendment speech present under other statutes that punish threats. (*People v. Hines* (1997) 15 Cal.4th 997, 1061 (*Hines*) [relying on *In re M.S.* in addressing constitutionality of section 69]; *People v. Superior Court (Anderson)* (1984) 151 Cal.App.3d 893, 896 (*Anderson*) [acknowledging that the holding in *Watts* applies to section 69].)[5] Accordingly, a conviction under

[5] Respondent largely ignores this line of authority, arguing instead that "to protect First Amendment speech, 'the term "threat" has been limited to mean a threat of unlawful violence used in an attempt to deter the officer.' " (Quoting *In re Manuel G.* (1997) 16 Cal.4th 805, 814–815.) However, the existence of other judicial constructions of section 69 to protect First Amendment rights does not negate the additional requirement that Appellant may only be punished for true threats. Indeed, the case *Manuel G.* cited for its limiting construction was *Anderson*, *supra*, 151 Cal.App.3d 893, which expressly acknowledged *Watts* as an *additional* limitation on prosecutions under section 69. (*Anderson*, at p. 896.)

section 69 based on threatening speech is unconstitutional if the speech was not a "true threat."

" 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (*Virginia v. Black*, *supra*, 538 U.S. at p. 359; accord, *Lowery*, *supra*, 52 Cal.4th at p. 427; *People v. Lopez* (2015) 240 Cal.App.4th 436, 448.) In *Lowery*, the California Supreme Court followed *Virginia v. Black* in construing a statute relating to threats of violence against a crime witness or victim "as applying only to those threatening statements that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat, namely, 'a serious expression of an intent to commit an act of unlawful violence' [citation], rather than an expression of jest or frustration." (*Lowery*, at p. 427; accord, *People v. Chandler* (2014) 60 Cal.4th 508, 522; see also *In re M.S.*, *supra*, 10 Cal.4th at p. 710 ["When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection."].)

We make "an independent examination of the record" in determining whether "the speech at issue is an unprotected true threat." (*In re George T.* (2004) 33 Cal.4th 620, 632–633.) Nevertheless, "[b]ecause the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue." (*Id.* at p. 634.) In the present case, the material facts are not in dispute. Thus, we must make an independent legal determination whether a "reasonable listener would understand" the February 2017 letter to constitute " 'a serious expression of

an intent to commit an act of unlawful violence' " "in light of the context and surrounding circumstances." (*Lowery*, *supra*, 52 Cal.4th at p. 427; see also *In re Ernesto H.* (2004) 125 Cal.App.4th 298, 302–303 ["because the minor raises a 'plausible First Amendment defense,' we make an 'independent examination of the record' in accord with *George T.*, 'to ensure that the speaker's free speech rights have not been infringed by the trier of fact's determination that the communication at issue constitutes a criminal threat.' "].)

We conclude that, as a matter of law, a "reasonable listener" would not have understood Appellant's February 2017 letter to be a true threat. This is due to the combination of three factors: first, Appellant's threats were delusional; second, Appellant threatened violence by third parties who were not (except in his delusion) his associates; and third, Appellant repeatedly assured he was not threatening to personally commit violence.[6]

First, Appellant's threat was, as he argues, "patently delusional." The letter stated that Appellant's confinement for parole violations constituted kidnapping of a Russian military operative and threatened that the entire District Attorney's office would be sentenced to death by firing squad. The threat was utterly nonsensical, and respondent has never argued to the contrary. As the prosecutor admitted in his closing statement to the jury at trial, "I certainly don't expect . . . anybody to really believe that Mr. Smolkin is an agent or ever was an agent of the Russian military; that he had any real power . . . to bring jets or . . . to sentence people to death."

Although we do *not* conclude a delusional threat can *never* constitute a true threat, it is notable that respondent fails to identify any case approving

[6] We identify the factors that are relevant on the facts of the present case in making the true threat determination. We do not hold the presence of all three factors is necessary to support our determination.

the criminal prosecution of a person for a patently delusional threat. Instead, the cases cited by the parties (and other related California cases) involve implied threats, hyperbolic threats, improbable threats, vague threats, or metaphorical threats—not delusional threats. (See *Virginia v. Black*, *supra*, 538 U.S. at p. 360 [cross burning]; *Watts*, *supra*, 394 U.S. at pp. 707–708 [anti-war protester referred to shooting President]; *In re George T.*, *supra*, 33 Cal.4th at p. 624 [student gave classmates a threatening poem]; *Hines*, *supra*, 15 Cal.4th at pp. 1058–1059 [threats by jail detainee to sheriff's deputies]; *People v. Iboa* (2012) 207 Cal.App.4th 111, 120 [aggressive statements and physical behavior toward firefighters and police]; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1219 [metaphorical threats of violence] (see p. 12, fn. 8, *post*); *In re Ernesto H.*, *supra*, 125 Cal.App.4th at p. 302 [student threatened, " 'Yell at me again and see what happens' "].) In any event, the delusional nature of the letter is not the only basis for concluding the threats made therein were not true threats.

The second important factor is the circumstance that Appellant threatened violence by third parties who were not—except in his delusion—his associates. Thus, although Appellant threatened Horvath with death, he said it would be accomplished by Russian military authorities and emphasized he was "threatening formal, official foreign military force & justice." Instructive on this point is the decision in *United States v. Lincoln* (9th Cir. 2005) 403 F.3d 703 (*Lincoln*). There, the imprisoned defendant attempted to send a letter to President Bush stating that the President would die soon because " 'they' " promised he would, apparently referring to followers of Osama Bin Laden. (*Id.* at pp. 705–706.) The Ninth Circuit held it was unconstitutional to convict the defendant of threatening the President, because the letter was not a "true threat." (*Ibid.*) The court relied on the

literal absence of a personal threat in the letter, reasoning the "letter does not connote anything that it does not literally say. To the contrary, it literally says what it means, that President Bush will die because 'they' said he will. The fact that [defendant] stated six months earlier that he planned to shoot the President does not give new meaning to [defendant's] statement that Bin Laden or Al Qaeda will kill the President." (*Id.* at p. 707.) Similarly, Appellant threatened only violence by third parties who were plainly not his associates. Respondent does not argue that any reasonable listener would have believed that Appellant had any connection to the Russian government, much less that he had any ability to initiate Russian military proceedings against anyone.

In this context, *United States v. Miller* (6th Cir. 1997) 115 F.3d 361 provides a useful contrast. There, a prisoner sent President Bill Clinton a letter threatening to have him and his family killed, as well as the Vice President and his wife. (*Id.* at p. 363.) The letter asserted, "There ain't-no-doubt-in-my-mind that I can have you all killed at will, and you can't prove shit because I'm already locked up." (*Ibid.*) On appeal from a conviction based on the threat, the defendant argued "a rational person would not believe that the subject communication published a 'true threat' to kill or injure the President or the Vice President because he was incarcerated in a penal institution at the pertinent time and because the letter's content evinced a delusional originator." (*Ibid.*) The Sixth Circuit disagreed, concluding "A reasonable person would foresee that the letter in controversy would be construed, and investigated, by the authorities as a potentially serious threat against the lives or safety of the President and Vice President. The writing menacingly suggested its author's motives for inflicting injury upon the President and the Vice President, pointedly asserted that his

*claimed associates* outside the prison would carry out the threatened assassinations, and confidently proclaimed his perceived immunity from prosecution by virtue of his incarceration alibi." (*Id.* at p. 364, emphasis added.)

*Miller* is distinguishable from the present case. The author in *Miller* may have been delusional, but he did not describe delusional means of accomplishing his threats and he asserted he had associates who would act on his behalf. In sharp contrast, Appellant's February 2017 letter threatened violence by third party actors that no reasonable listener could believe had a relationship with Appellant.

The third important factor is that Appellant repeatedly assured he was not threatening to personally commit violence. He wrote in the February 2017 letter, "Let me be crystal clear—I have no training in riflery or authorization to carry out an execution . . . . My only part in the execution, as psyops officer, will be to livestream it on Facebook." He emphasized at the end of the letter, "Once again, I am not authorized to, nor will I, take any actions that violate California laws . . . ." And he wrote in a margin, "It is clear to any rational person that I pose no threat to anybody." Those disclaimers are comparable to a circumstance emphasized in *Lincoln*, where the defendant "disassociated himself from any violent action 'by twice crossing out the words "us" and "we" and substituting the words "they" and "them." ' " (*Lincoln*, *supra*, 403 F.3d at p. 707.) We recognize that Appellant may have added those disclaimers for the express purpose of avoiding criminal liability for his threats. Even if that is so, the disclaimers nevertheless would have signaled to a reasonable listener that Appellant was not making a serious threat of violence. This is particularly true in light of the delusional nature of the threatened violence and the lack of any

threatened conduct by actual associates of Appellant. Those circumstances left Appellant as the only possible violent actor, and the letter repeatedly disclaimed any such intent.

Respondent argues on appeal that, "Although Appellant could not deploy the Russian army, he was to be released one week after he sent the letter, and he could have other means of inflicting harm at his disposal." However, we are not confronted in the present case with a situation where a defendant has a record of committing acts of violence. It may have been reasonable for Horvath to be concerned about the possibility he might be targeted by Appellant for harassment, but respondent has not pointed to any evidence Appellant had committed violent acts in the past. Given the delusional nature of the threat itself and the absence of any link between Appellant and the commission of violent acts, a reasonable listener would not view the letter as " 'a serious expression of an intent to commit an act of unlawful violence.' " (*Lowery*, *supra*, 52 Cal.4th at p. 427.) Based on our independent examination of the record, we conclude criminally sanctioning Appellant on the basis of the February 2017 letter was unconstitutional as a matter of law. (Cf. *People v. Nishi* (2012) 207 Cal.App.4th 954, 965 ["defendant's proclamation that he was 'armed and will now fire on all Sheriff and Fish & Game after this email' " was a true threat].)[7]

Quoting *Hines*, *supra*, 15 Cal.4th 997, Appellant argues his conviction was unconstitutional because his letter did not have " 'a reasonable tendency to produce in the victim a fear that *the threat* will be carried out.' " (*Hines*, at p. 1061, quoting *In re M.S.*, *supra*, 10 Cal.4th at p. 714, italics added.) Although that is not part of the *Lowery* definition of true threats, Appellant

[7] Because we reverse the conviction, we need not direct the trial court to resentence under SB 136.

appears to argue it is an *additional* finding required for threatening speech to constitute a true threat, at least under section 69. He also argues there was instructional error because the jury was not instructed to make that finding. Given our conclusion the February 2017 letter is not a true threat for the reasons recited above, we need not determine whether a true threat must always be one the defendant is literally capable of carrying out. (See *Lowery*, *supra*, 52 Cal.4th at p. 427 [construing a threat statute to encompass only true threats to preserve its constitutionality, but not adopting the language at issue from *Hines* and *In re M.S.*].)[8]

DISPOSITION

The trial court's judgment is reversed.

[8] We question the wisdom of such a rule if it would apply to a credible, but metaphorical, threat of harm. For example, in *D.C. v. R.R.*, *supra*, 182 Cal.App.4th at p. 1219, the defendant posted a message on the plaintiff's web site stating " 'I want to rip out your fucking heart and feed it to you' " and " 'I'm . . . going to pound your head in with an ice pick.' " The court held the literal impossibility of accomplishing the threat was not determinative, because "[t]he true threat analysis does not require that a speaker intend to inflict bodily harm in the precise manner described in a threat." (*Ibid.*) That case and other imaginable scenarios create concern that the rule Appellant requests on appeal would protect some speech that constitutes a true threat. Notably, *Hines* and *In re M.S.* did not address the particular issue Appellant raises and *Lowery* (much more recently) interpreted a threat statute to preserve its constitutionality but did not include the language upon which Appellant relies.

SIMONS, J.

We concur.

JONES, P.J.

BURNS, J.

(*People v. Smolkin* / A155891)

APPENDIX

ANATOLY SMOLKIN
PYCKAA APMUA - RUSSIAN ARMY
NCO - PSYCHOLOGICAL OPERATIONS, INFORMATION WARFARE
OFFICER - MILITARY INTELLIGENCE
PRISONER OF WAR · SOLANO COUNTY JAIL STANTON, TRAVIS AFB

UC BERKELEY, BA - 1520 QUANTITATIVE ECONOMICS, ELECTRICAL ENGINEERING & COMPUTER SCIENCES - 2006
NORTHWESTERN SCHOOL OF LAW - 2010
SERVING RUSSIAN INTEL OFFICER SINCE JULY 201[illegible] WHEN I WAS RECRUITED IN MASSANDRA, CRIMEA
BORN · KIEV, USSR - 1984
EMIGRATED TO SAN FRANCISCO - 19[illegible]
GREW UP IN SF'S SUNSET, WHERE RUSSIANS & CHINESE THINK [illegible] ALL MONKEYS

РУСКИЕ ПЛЮЮТ НА ВЛАСТЬ АМЕРИК И ЕВРОП.

KRISHNA ABRAMS
DISTRICT ATTORNEY
675 TEXAS STREET
FAIRFIELD, CA 94533

WARNING OF RUSSIAN MILITARY RETALIATION FOR KIDNAPPING A RUSSIAN SOLDIER UNDER FALSE PRETENSES AFTER THE ~~UNCONDITIONAL SURRENDER OF THE UNITED~~ STATES TO THE ARMED FORCES OF RUSSIA & CHIN[A]

НАЧИСТКИХ ТЮРЬМ И НАЧИСТКИХ СТРАН! РУСКИЕ ИДУТ И ПРИЗЫВАЮТ ВСЕХ К СЛАВЯН!

DEAR HERR ABRAMS:

BY NOW, I'M SURE YOU KNOW WHO I AM. IF NOT, ASK MR. HORVATH OR MR. ELLIS. THE SHORT OF IT IS, IN 2011 I LAUNCHED A PSY-OPS CAMPAIGN AGAINST THE ENTIRE AMERICAN LEGAL INDUSTRY, TARGETING SEVERAL BIGLAW FIRMS AND A GANGSTER TRAINING ACADEMY CALLED TOWN SCHOOL FOR BOYS IN SAN FRANCISCO. AS AN EXPECTED RESULT, I WAS FOUND "INCOMPETENT TO STAND TRIAL" BY TWO NAZI PSYCHIATRISTS, SENT TO ATASCADERO STATE HOSPITAL WHERE IN SHORT ORDER I WAS PRONOUNCED COMPETENT BUT WITH "NARCISSISTIC PERSONALITY DISORDER". LOOK UP THE DETAILS. IT'S ALL PUBLIC.

THEN I WAS TRIED IN A MONKEY SHOW TRIAL IN 2013 WHEREIN I WAS GRANTED LESS THAN 15 HRS / WEEK SLEE[P] & HOUSED WITH INMATES THAT PURPOSELY MADE TRIAL IMPOSSIBLE EXCEPT TO NOT COLLAPSE. AFTER BEING CONVICTED BASED ONLY ON BLATANT PERJURY BY EFFECTIVELY ENTIRE STATE BAR OF CALIFORNIA, I WAS SUBJECTED TO FIVE YEARS OF CAREFULLY EXECUTED SLEEP DEPRIVATION & MALNUTRITION. UPON RELEASE, I WAS PAROLED TO THE MOST MILITARIZED COU[NTY] IN NORCAL, FOR OBVIOUS REASONS, WITH A BLATANTLY UNCONSTITUTIONAL PAROLE CONDITION BASED ON WHICH I AM IMPRISONED IN YOUR MAXIMUM SECURITY "JAIL".

(IN FACT, IT IS OBVIOUSLY THIS IS LEGAL IN YOUR NAZI COUNTRY SINCE THERE'S NO PROOF.)

(FACT: I WAS [illegible] VIOLATION OF THIS [illegible] BY THE EFFECTIVE THE PAROLE OFFICE.)

~~HERE'S WHY YOU SHOULD PAY ATTENTION:~~

THE REAL REASON FOR MY IMPRISONMENT WAS THE THREAT OF HACKING LAW FIRMS, WHICH IS NOT ILLEGAL WITHOUT ASSOCIATED EXTORTION. THE RESPONSE ABOVE AMOUNTED TO USING POLICE ACTION BORNE OF PERJURY TO RESPOND TO A NATIONAL SECURITY THREAT. IF YOU CHEC[K] THE PUBLIC RECORDS, MY 2011 THREATS EXACTLY MIRRORED HACKING BY RUSSIA, CHINA & ~~PE~~ DPRK BTWN 2013 AND 2016.

THEN, ON 16 NOV 2016 I POSTED TO FACEBOOK AN INDICATION THAT RUSSIA WOULD USE SATELLITE WEAPONS IN A COMING TOTAL WAR AGAINST THE UNITED STATES DECLARED 16 JUN 2016 WHEN RUSSIAN WARPLANES BOMBED A U.S. BASE IN SYRIA. THIS WAS THE FIRST ATTACK BY A MAJOR MILITARY AGAINST THE US SINCE PEARL HARBOR.

~~NOW MR ABRAMS, I AM EITHER A CLAIRVOYANT MENTALLY ILL SHAMAN OR, AS I STATED IN COURT, COMMITTING OPEN TREASON WHICH YOUR NAZI LEGAL SYSTEM BECAUSE CANNOT RESPOND TO BECAUSE OF 2012 & NOV. 2016 FINDINGS THAT I HAVE "NARCISSISTIC PERSONALITY DISORDER",~~ I AM A GRU OFFICER.

IF YOU LOOK AT MY FACEBOOK, IT SHOULD BE OBVIOUS THAT (a) I WAS IN CRIMEA IN JULY 2011, & (b) I HATE AMERICA. LEADING TO (c) I WAS RECRUITED BY THE GRU TO DEMONSTRATE WHAT A FARCE THE SHOW THAT YOU CALL LAW IS.

AFTER MR. ELLIS' & MR. HORVATH'S SEPT. 2016 MISCONDUCT, THEY WERE SENTENCED TO DEATH IN MOSCOW FOR THE CRIME OF KIDNAPPING A SOLDIER OF THE ARMED FORCES OF RUSSIA. I AM SCHEDULED TO BE RELEASED FROM MY CURRENT INCARCERATION 6 MAR 2017. IT IS CLEAR TO ANY RATIONAL PERSON THAT I POSE NO THREAT TO ANYBODY. I WARN YOU: IF ALL CHARGES ARE NOT DROPPED, ALL PERJURED RESTRAINING ORDERS LIFTED, AND MY PAROLE CANCELLED I WILL ~~SENTENCE~~ CHARGE, BUT EFFECTIVELY SENTENCE THE ENTIRE SOLANO COUNTY DA's OFFICE WITH KIDNAPPING CONSPIRACY ~~TO~~ BY DEATH BY RUSSIAN MILITARY FIRING SQUAD. LET ME BE CRYSTAL CLEAR - I HAVE NO TRAINING IN RIFLERY OR AUTHORIZATION TO CARRY OUT AN EXECUTION: WHAT I AM SAYING IS THAT IF I HAVE TO REPORT TO PAROLE ON 7 MAR 2017, ~~ON~~ BEFORE 31 DEC 2017 YOUR ENTIRE OFFICE WILL BE ARRESTED BY RUSSIAN MILITARY POLICE, TRIED IN A RUBBER STAMP TRIAL FOR KIDNAPPING, AND SENTENCED TO DEATH BY FIRING SQUAD UNDER DT 24.7 & EX 21.16. MY ONLY PART IN THE EXECUTION, AS PSYOPS OFFICER, WILL BE TO LIVESTREAM IT ON FACEBOOK. IF YOU WANT TO KEEP THIS CHARADE, GO AHEAD, TRY ME FOR CRIMINAL THREATS AGAIN - I AM BEING AS CLEAR AS I CAN BE, AFTER RUSSIA'S 20 DEC 2016 SATELLITE WEAPONS, THE SAGA OF MICHAEL FLYNN, & THE RUSSIAN CONSULATE OF SF'S 29 DEC 2016 PRESS CONFERENCE, EVEN A PHILANDERING PAGAN AMERICAN ~~[illegible]~~ GANGSTER HINDU NAMED "KRISHNA" SHOULD SEE THE WRITING ON THE WALL. ONCE AGAIN, I AM NOT AUTHORIZED TO, NOR WILL I, TAKE ANY ACTIONS THAT VIOLATE CALIFORNIA LAWS - I AM THREATENING FORMAL & OFFICIAL FOREIGN MILITARY FORCE & JUSTICE VERY TRULY YOURS, WHICH DOES NOT HAVE A DEMAND (WITHOUT [illegible]) ... - MONKEY REPUBLIC [illegible]

CONTROLLED DOCUMENT: Printed By : COUNTY\NREHMAN On 3/16/2017 9:47 PM

A155891 / People v. Smolkin

Trial Court: Superior Court of Solano County

Trial Judge: Honorable Arvid Johnson

Counsel: Orzo William Childs, Jonathan Soglin, and J. Bradley O'Connell, By Appointment of the First District Court of Appeal under the First District Appellate Project, for Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Ronald E. Niver, Deputy Attorney General and Leif M. Dautch, Deputy Attorney General.